SANBORN, ASSIGNEE, v. FIRST NATIONAL BANK OF GREELEY.

LANDLORD AND TENANT—APPURTENANCES.

The defendant in error and others executed and delivered to the assignor of the plaintiff in error the following contract: "We, the undersigned, agree to pay each the sum set opposite his name, * * * yearly in advance to Samuel D. Hunter, or his assigns, in consideration that said Hunter and assigns give a lease to the United States government of the room now occupied by the post office in Park Place, Greeley, for the use of the post office for the term of five years, at a lower rate of rent than an adequate compensation for said premises, to the end that the post office in Greeley may be kept in its present location for the better accommodation of its patrons." The assignor of the plaintiff in error performed his part of the agreement. *Held*, that the contract did not create the relation of landlord and tenant between the parties thereto, and that the right to receive payments thereunder was not appurtenant to the land upon which the post office was located and did not pass by a deed conveying the premises.

*Error to the District Court of Weld County.*

Mr. H. N. HAYNES, for plaintiff in error.

Mr. CHARLES D. TODD and Mr. JAMES W. McCREERY, for defendant in error.

THOMSON, J., delivered the opinion of the court.

The plaintiff in error brought suit against the defendant in error upon the following contract:

"GREELEY, COLO., Jan. 1st, 1889.

"We, the undersigned, agree to pay each the sum set opposite his name, or such proportion thereof as is necessary, yearly in advance to Samuel D. Hunter, or his assigns, in consideration that said Hunter and assigns give a lease to the United States government *of the room now occupied by*

*the post office in Park Place*, Greeley, for the use of the post office for the term of five years, at a lower rate of rent than an adequate compensation for said premises; to the end that the post office in Greeley may be kept in its present location for the better accommodation of its patrons.

"First National Bank by J. M. Wallace, Pres., $200."

The complaint alleges that other interested parties signed the agreement, subscribing different amounts, and that the total subscription aggregated $435 per annum; that to meet the active competition for the location of the post office, Hunter was obliged to rent the room to the United States for $600 per year, whereas its rental value was $1,200 per year; and that he effected a lease to the United States at an annual rental of $600 for five years; that by virtue of the lease the post office remained on the premises for the full term of five years; that the defendant made payments on its subscription, aggregating $400, but refused any further payment; and that on the 26th day of December, 1890, Hunter made a general assignment of all his property for the benefit of his creditors to the plaintiff Burton D. Sanborn, who duly qualified as assignee, and has ever since been acting as such.

The answer denies that the rent reserved in the lease to the United States was not an adequate compensation; alleges that the amount paid by the bank to Hunter was $490, and that prior to January 1, 1890, Hunter sold and conveyed the premises to one Warren Currier, and indorsed on the lease an assignment to Currier of all his right, title and interest in the lease, to take effect on that day. The answer further alleges that on July 1, 1891, on the written request of Currier and Hunter, the postmaster, Rudolph H. Johns, attorned to Currier, and agreed to pay the rent thereafter to him.

The defendant moved to strike out all that portion of the answer relating to the assignment of the lease by Hunter to Currier, and to the attornment of the postmaster to Currier, as irrelevant and immaterial. The motion was overruled,

and the plaintiff replied at some length, setting up a variety of matters in connection with the transfer to Currier, and the assignment of the lease, to which we do not feel called upon to give special attention. The judgment was for the defendant.

The contention is made on one side, and resisted on the other, that by the transfer of the property, and the assignment of the lease, the ownership of the contract passed from Hunter to Currier, and that whatever is due upon it is due to him. It is true, as a general proposition, that in the case of a lease for years, a transfer of the land carries with it the rents accruing under the lease. Currier was entitled to the rent falling due from the United States after the conveyance to him, by virtue of his deed, and without a special assignment of the lease; but was the contract with the bank of such a character that he was also entitled to the several sums, as they became due, which the bank agreed to pay? To determine this question we must look into the contract itself. Both parties agree that the meaning of the contract is that the bank should pay $200 yearly, if that sum should be necessary, and if it should not be necessary, then such portion of the amount as should be necessary, to make good to Hunter the loss he would sustain in consequence of being compelled to take less than the rental value of the premises in order to effect the lease. The uncontradicted evidence was that the yearly rental value of the premises was $1,200. The annual rental reserved was $600. The bank was therefore liable for the full amount of its subscription. The agreement was to pay the $200 to Hunter or his assigns; and were it not for what immediately follows, it might be said that the money was payable to Hunter while he remained the owner of the property, and afterward to his grantee or grantees. But the expressed consideration of the agreement was that Hunter *and his assigns* should give the lease. The effect of the language is that the lease should be given by the owner of the property at the time the contract with the government should be completed, so that the property should be bound by the

lease, to the end, as the instrument says, that the post office might be kept in its then location. The word "assigns," in the connection in which it is used, means any person or persons to whom the property might be transferred before the execution of the lease, and cannot refer to persons who might succeed to the title afterwards, because no lease from them would be necessary. They would be bound by the lease already existing. If Hunter should remain the owner, and make the lease, the money would be payable to him. But if, before the lease was made, Hunter should transfer the property, and his grantee should make the lease, then the money would be payable to the grantee. Hunter did make the lease while he had the full power to bind the property, and the money was therefore payable to him. No point, however, is made on the word " assigns " as it appears in the contract; the sole contention being that the right to receive the money was appurtenant to the land, and passed by the conveyance. We are unable to assent to the proposition.

The contract created no relation resembling that of landlord and tenant between the parties. The subscribers acquired no interest or right in the premises. The money agreed to be paid was not payable as rent. The law of landlord and tenant had no applicability whatever to the transaction. Between landlord and tenant there is a privity of estate. The tenant holds by his landlord's title. Each owes to the other, so long as the relation of landlord and tenant exists, certain duties which are incident to that relation, and are the legal consequences of the privity of estate. It is in virtue of this privity that the rents follow the reversion, and that the successor in title becomes the landlord. Taylor's Landlord and Tenant, secs. 425, 436; Washburn on Real Property, (marginal pages) 315, 337.

The defendant, presumably having in view some benefit, direct or indirect, to be derived to itself from the retention of the post office in the location it then occupied, and in order to compensate Hunter for the disadvantageous lease he would, by reason of competition, be probably compelled

to make in order to accomplish the purpose, agreed to pay him a sum of money, in yearly installments, in consideration that he would make the lease.  The moment he executed the lease to the United States, the contract was fully executed on his part, and the money which the bank agreed to pay became an indebtedness against it in his favor.  The contract gave the bank no right in the premises, or interest in the lease.  When Hunter made the lease, he had, so far as the bank was concerned, nothing further to do.  He owed it no further duty.  The absence of privity of estate involved the absence of its consequences; and the transfer of the land, while it carried the accruing rents, which were the product of the land, did not carry a mere indebtedness, in an action for the recovery of which the land or its possession could not figure.

The motion to strike should have been sustained.  The matter objected to was wholly irrelevant and immaterial. The evidence showed that the defendant was entitled to a credit of $490.00 instead of $400.00 ; but there was no evidence whatever which authorized the rendition of judgment in favor of the defendant.  Upon the record the plaintiff was entitled to the full unpaid balance.

The judgment must be reversed.

*Reversed.*